## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

American Immigration Lawyers Association,
1331 G Street, NW Suite 300
Washington, D.C. 20005-3142

Parrilli Renison, LLP
610 SW Broadway Suite 505
Portland, Oregon 97205


                    Plaintiffs,

     v.

Kenneth Cuccinelli, in his Official Capacity,
Acting Director, U.S. Citizenship and
Immigration Services,
c/o Office of the General Counsel
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485

U.S. Citizenship and Immigration Services;
c/o Office of the General Counsel
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485

                    Defendants.

Case No.


## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
## PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER
## AND FOR PRELIMINARY INJUNCTION

## **INTRODUCTION**

Defendants' have issued "public charge" regulations ("Regulation"),

"*Inadmissibility on Public Charge Grounds*," 84 Fed. Reg. 41,292 (Aug. 14, 2019)

(to be codified at 8 C.F.R. Parts103, 212-14, 245, 248), without issuing to the

public final versions of the requisite forms to comply with the rule and allow for

the filing of certain immigration benefits provided under the Immigration and

Nationality Act ("INA").  With less than a week before a final rule with far-

reaching consequences on over 1.2 million individuals and companies seeking to

legally remain in the United States takes effect, the agency charged with

implementing this final rule has failed to publish required forms necessary for

compliance with immigration laws.  Even if these forms are published today, it

leaves individuals, employers, attorneys, and most importantly pro-se applicants,

without sufficient notice and time to understand how to complete the forms and

submit the requisite supporting evidence for all time-sensitive applications.  Failure

to file these forms in a timely fashion could result in a lapse of lawful immigration

status for these individuals impacting their ability to lawfully remain in the United

States to continue their employment or be with their families.  Most significantly,

USCIS has failed to provide any transition period for these individuals, because

without well-publicized notice, the agency posted an update buried deep on their

website, that they will no longer accept certain forms on or after October 15, 2019,

despite the fact that those forms are valid and do not expire for months or even years.  This will catch many off-guard and result in unnecessary rejection or denial of petitions or applications, many of which require significant time and expense to prepare.  Defendants' actions, if not immediately enjoined to keep the status quo, will violate the right to file applications and petitions for immigration benefits under the INA and accompanying regulations, and cause other irreparable harm to plaintiffs.

Immediate injunctive relief is essential because Plaintiffs have a substantial likelihood of success on the merits of its complaint; Plaintiffs will suffer irreparable harm in the absence of injunctive relief; there is no adequate remedy available at law; the balance of hardships favor Plaintiffs, and the requested injunctive relief will not harm the public interest.  Everyday begets further confusion and harm.  Therefore, Plaintiffs respectfully request that this Court immediately enjoin Defendants from rejecting or denying filings prepared on current editions of the Forms I-129, I-539, I-485, and I-864 until such time as a full hearing can be held on the motion for preliminary injunction.

## STATEMENT OF FACTS

The American Immigration Lawyers Association (AILA) is the national association of immigration lawyers established to promote justice, advocate for fair and reasonable immigration law and policy, advance the quality of immigration

and nationality law and practice, and enhance the professional development of its members. *See Exhibit B* (Declaration of Jesse M. Bless, Director of Litigation at AILA)

Plaintiff Parrilli Renison LLC is a Portland, Oregon-based immigration law firm, and operates under the trademark ENTRYLAW®   The firm was established in 2007, and its founding partners, including undersigned counsel, Brent Renison, began working in the field of immigration law in the mid-1990s in other firms. Mr. Renison and his partner employ eight staff that solely provide immigration services.  The attorneys are members of AILA.  Parrilli Renison derives all income from the provision of immigration legal services, which requires the collection of information on USCIS forms.

Parrilli Renison LLC has expended significant staff resources and time, including attorney and paralegal time, preparing forms for clients on Forms I-485, I-539, I-129, and I-864.  Parrilli Renison LLC has been prevented by Defendants from obtaining final versions of the new forms which are set to go into effect October 15, 2019.  Since October 14, 2019, is a federal holiday, Columbus Day, and post offices and USCIS offices will be closed on that day and the preceding Sunday, the latest acceptable date for filings through the U.S. Postal Service will be Saturday, October 12, 2019. That is just four business days from Monday, October 7, 2019.  USCIS's delay in publishing revised and new forms combined

with this deadline for current forms will harm Plaintiff Parrilli Renison LLC and

AILA and substantially impairs the ability of organizations, attorneys and

applicants to prepare for the issuance of the dramatic changes to the submission of

forms to comply with the Public Charge regulations. *See* Exhibit A (Declaration of

Parrilli Renison LLC partner and owner Brent W. Renison); Exhibit B.

Defendants' unlawful actions have materially frustrated AILA's core

missions of providing direct legal advice so immigration attorneys can properly

advise, represent and prepare applications for immigration benefits.  *See* Exhibit B.

The failure to accept current, unexpired versions of the forms necessary to apply or

petition for immigration benefits without releasing the revised forms in advance of

the arbitrary October 15, 2019 deadline and allow for a period of transition, has

significantly interfered with AILA's mission and will, if left unchecked, continue

to impose substantial, tangible costs on the organization.  *See id.*  In particular, the

refusal to accept the current forms to apply for immigration benefits while

withholding release of the new forms or extending a reasonable time for transition

to comply with the complex new rule to determine whether an applicant for

admission or adjustment of status will likely to become a public charge will

dramatically reduce and impair the number of members that AILA can effectively

serve. *Id.*

Defendants' harm has already caused AILA to divert scarce resources—including staff time to: (1) seeking answers from the agencies to prepare its members for the information requested on the forms; (2) advising members on how strategies to avoid delays from Defendant's inaction; (3) creating new resources and materials without the requisite forms to diligently prepare members for the upcoming changes;  and (4) training staff based on the non-finalized and anticipated forms that will have to be retrained if and when Defendants release the final forms.  *Id.*  Until enjoined, Defendants' actions will cause a perceptible impairment of AILA's mission.  *Id.*

On October 10, 2018, the Department of Homeland Security published its Notice of Proposed Rulemaking for the Regulation to change the ground of inadmissibility based on a "public charge" determination.  On August 14, 2019, the Department of Homeland Security published the Regulation, which drastically redefines the term "public charge."  84 Fed. Reg. 41,292, 41,501 (Aug. 14, 2019) (to be codified as 8 CFR § 212.21(a)).  The rule published in the Federal Register sets forth some of the most consequential changes in USCIS policy since the agency's creation. The regulations substantially change the criteria by which USCIS determines whether an applicant for admission or adjustment of status is likely to become a "public charge" and thus inadmissible to the United States under INA § 212(a)(4).  In making this determination, USCIS officers will apply a

6

complex and intricately weighted "totality of circumstances" test assessing a vast array of factors. Those applicants must file in conjunction with Form I-485 a new form—Form I-944—requiring extensive documentation. As these changes make clear, the rule will fundamentally reshape the filing and adjudication of adjustment of status cases.  The rule also imposes a novel "public charge condition" on most requests for change or extension of nonimmigrant status under which adjudicators will examine nonimmigrants' use of designated public benefits while in the status they wish to change or extend.

By DHS's own estimate, the rule will impact more than 1.2 million applicants and petitioners annually, including over 382,000 adjustment of status applicants and over 855,000 applicants and petitioners for change or extension of status. These estimates do not include the many millions of family members, community members, employers, and other individuals and entities affected by the rule.  For example, Form I-485 is 18 pages long, with 43 pages of instructions. According to the Form I-485 instructions, under the Paperwork Reduction Act, OMB estimates that the information collection for this form is 6 hours and 15 minutes.  Form I-129 is 36 pages long, with 29 pages of instructions. According to the Form I-129 instructions, under the Paperwork Reduction Act, OMB estimates that the information collection for this form is more than 3 hours including the required supplements depending on nonimmigrant visa type selected.  Form I-539 is 7 pages

long with 17 pages of instructions and Form I-864 is 10 pages with 17 pages of instructions. According to the Form I-864 instructions, under the Paperwork Reduction Act, OMB estimates that the information collection for this form is 6 hours.

Parrilli Renison LLC typically exceeds the estimated time in preparing and filing each of these forms and petitions.  Exhibit A.  Parrilli Renison LLC, with its two attorneys and 8 staff, has expended hundreds of hours for many clients preparing filings using existing versions of these forms, and due to the collection burden, applicant's business travel schedules (applicants must be in the U.S. on the day of filing), and other factors, has invested tens of thousands of law firm time and energy into these petitions. Exhibit A. Few of these applications and petitions will be ready to file before the effective date of the current forms, and Parrilli Renison LLC, has been prevented from preparing filings for clients using the new forms because the new forms have not been issued.  Parrilli Renison LLC usually prepares I-485 applications, which also include Forms I-131 and Form I-765, as well as Form I-864 for family based cases, over an average four to eight week period of time, and I-129 and I-539 combination cases over a four to six week period of time, coordinating information collection, supporting document collection, resolving legal issues, answering client questions about responses, researching and analyzing issues, preparing draft forms for client review, preparing

finalized forms for client signatures, arranging for delivery, coordinating with clients about requirements for international travel and U.S. physical presence during filings, and completing the filing after receipt of necessary filing fee checks. There are many details which go into an immigration filing, and because USCIS requires technical perfection in filings and is unforgiving in its stance for errors, the time spent on filings is considerable. The business loss due to Defendants' policy to Parrilli Renison LLC, a small two partner law firm, is estimated to be between $25,000 to $50,000, and when extended across thousands of AILA members law firms the losses will be astounding. *See* Exhibit A.

Despite the gravity of these policy changes, the scale of the impacted populations, and the imminence of the rule's implementation, as of the date of this filing, USCIS has not published final versions of the revised and new forms associated with the regulation. DHS published *draft* versions of those forms in conjunction with the rule, but it remains unknown to what extent the *final* versions will resemble the drafts. Notwithstanding the unavailability of the updated forms, USCIS maintains that it will not accept the current editions of Forms I-485, I-129, I-539, I-864, and I-864EZ, if postmarked on or after October 15, 2019. *See* Exhibit C (as attested by the Renison Declaration, Exhibit A, copies of USCIS website notices from October 4, 2019)  The regulation's complexity—including its elaborate "totality of circumstances" test—has prompted significant confusion

among the public, local and state governments, immigration attorneys, and organizations, like AILA, regarding how USCIS plans to implement the rule in practice.  Exhibit B.  And as widely reported, the rule has sparked fear and panic over the potential immigration consequences of the use of public benefits—even public benefits not covered under the rule. Yet USCIS has elected not to stage any stakeholder events that would aid the public's comprehension of the regulation and resolve misconceptions. Likewise, the agency has not made publicly available any official guidance on implementation of the rule.

Parrilli Renison LLC has been harmed by Defendants' failure to provide in a timely manner new forms which it has announced it will only accept on or after October 15, 2019, because Parrilli Renison LLC has relied upon Defendants' currently valid and publicly available forms for the past two months while the firm has prepared filings for its many clients. *See* Exhibit A, p. 4. If Parrilli Renison LLC is forced to comply with Defendants' announced deadline of October 15, 2019, and made to use the new forms that the agency has not even published yet, without a grace period, Parrilli Renison LLC will be irreparably burdened with significant business income losses with resultant harm to its clients and their interests, which Parrilli Renison LLC is under ethical obligation to uphold. *See* Exhibit A, p. 4. The continuation of irreparable harm would be mitigated by the agency permitting current versions of the forms to be valid for a 60-day period

following publication of final, publicly available new Forms I-129, I-485, I-539, and I-864.

AILA has spent precious resources attempting to raise USCIS's failure to issue the requisite forms with agency personnel.  Exhibit B.  The failure to receive any notice as to the final forms for immigration benefits has significantly impacted both AILA ability to comply with its respective core functions.  Exhibit B.  AILA has diverted funds away from other priorities to serve its members through this crisis with educational materials and practice alerts on all developments.  *Id.* Defendants' failure to act has impacted AILA's ability to service its membership, including well-respected firms like Parrilli Renison, and it will continue to suffer irreparable harm as a result of Defendants' unlawful actions.  *Id.*

## LEGAL STANDARD

To receive preliminary relief, the D.C. Circuit requires that a plaintiff establish four factors:

> [1] that he is likely to succeed on the merits,
> [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,
> [3] that the balance of equities tips in his favor, and
> [4] that an injunction is in the public interest.

*Sherley v. Sibelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (alteration in original, quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "The same standard applies to both temporary restraining orders and to preliminary

11

injunctions." *Sterling Commercial Credit-Michigan, LLC v. Phoenix Industries I, LLC*, 762 F. Supp. 2d 8, 12 (D.D.C. 2011) (quoting *Hall v. Johnson*, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009)).  The purpose of a temporary restraining order, however, is to preserve the status quo for a limited period until the Court has an opportunity to pass on the merits of the demand for a preliminary injunction. *See, e.g., Barrow v. Graham*, 124 F. Supp. 2d 714, 715-16 (D.D.C. 2000), *citing Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir. 1989); *Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982)).

This Circuit recognizes that *Winter* raises questions about its long-standing practice of balancing the four factors on a sliding scale, in which a strong showing on one factor can counter a weaker showing on another: "In this circuit it remains an open question whether the 'likelihood of success' factor is 'an independent, free-standing requirement,' or whether, in cases where the other three factors strongly favor issuing an injunction, a plaintiff need only raise a 'serious legal question' on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (quoting internally *Sherley*, 644 F.3d at 398).  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830 (1981).

In addition, the APA permits this Court to "postpone the effective date of an agency action" where "necessary to prevent irreparable injury . . . pending conclusion of the review proceedings." 5 U.S.C. § 705.  The factors weighed in the standard for such a stay substantially overlap with the preliminary injunction factors.  *See, e.g., East Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1119 n.20 (N.D. Cal. 2018).  Plaintiffs meet the threshold requirements for a temporary restraining order because the attached evidence demonstrates a likelihood of success on the merits, irreparable harm, and that the balance of equities and public interest weigh in their favor.

## ARGUMENT

I.   **Plaintiffs are Likely to Prevail on its Claim that USCIS has Arbitrarily, Capriciously, and Unlawfully Failed to Provide Adequate Notice of the Necessary Forms so Eligible Applicants May Apply for Immigration Benefits on or after October 15, 2019**

This Court may issue a temporary restraining order where, as here, Plaintiffs have satisfied "the first and most important factor" -- they have established a likelihood of success on the merits." *Aamer*, 742 F.3d at 1038.  The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702.  The APA empowers this Court to set aside a final agency action where, as here, the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  "Agency action," for purposes of the

13

APA includes, an agency's "failure to act." 5 U.S.C. § 551(13); *see also Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62, 124 S. Ct. 2373 (2004) (stating that the "the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed").

Starting with the statutory text, this Court "must enforce plain and unambiguous statutory language according to its terms," *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251, 130 S. Ct. 2149 (2010). As the Supreme Court "ha[s] stated time and again [,] . . . courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, (1992) (*quoting Rubin v. United States*, 449 U.S. 424, 430, 101 S. Ct. 698 (1981)) (citations omitted).  Moreover, the words of the statute must be "placed in context," *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132, 120 S. Ct. 1291 (2000), and must be read "with a view to their place in the overall statutory scheme," *id.* at 133 (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809, 109 S. Ct. 1500 (1989).

By its plain terms, 8 U.S.C. § 1255(a) allows applicants to "make [] an application for . . .  adjustment" of status.  Section 245(a), 8 U.S.C. § 1255(a) provides:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a).

The procedural regulations detail the steps applicants and their representatives, if any, must follow to properly file an application. *See* 8 C.F.R. § 103.2(a). "Every form, benefit request, or other document must be submitted to DHS and executed in accordance with the form instructions regardless of a provision of 8 CFR chapter I to the contrary." 8 C.F.R. § 103.2(a). "An applicant or petitioner may be represented by an attorney in the United States, as defined in § 1.2 of this chapter, by an attorney outside the United States as defined in § 292.1(a)(6) of this chapter, or by an accredited representative as defined in § 292.1(a)(4) of this chapter." 8 C.F.R. § 103.2(a)(3). "All benefit requests must be filed in accordance with the form instructions." 8 C.F.R. § 103.2(a)(3). "USCIS will consider a benefit request received and will record the receipt date as of the actual date of receipt at the location designated for filing such benefit request whether electronically or in paper format." 8 C.F.R. §103.2(a)(7)(i). "A benefit

15

request which is rejected will not retain a filing date." 8 C.F.R. §

103.2(a)(7)(A)(ii).  A benefit request will be rejected if it is not: (A) Signed with

valid signature; (B) Executed; (C) Filed in compliance with the regulations

governing the filing of the specific application, petition, form, or request; and (D)

Submitted with the correct fee(s). If a check or other financial instrument used to

pay a fee is returned as unpayable, USCIS will re-submit the payment to the

remitter institution one time. If the instrument used to pay a fee is returned as

unpayable a second time, the filing will be rejected, and a charge will be imposed

in accordance with 8 CFR 103.7(a)(2)."  8 C.F.R. § 103.2(a)(7)(A)(ii).  A rejection

of a filing with USCIS may not be appealed.  8 C.F.R. § 102.2(a)(7)(A)(iii).

12.    Here, USCIS has arbitrarily and unlawfully failed to allow Plaintiffs to

properly and adequately file applications for most forms of immigration benefits,

including adjustment of status.  Exhibits A-C.  USCIS's announcement that it will

not accept the current versions on or after October 15, 2019 without releasing the

new forms in advance to meaningfully allow for proper compliance with the new

forms violates the plain language of 8 U.S.C. § 1255, because: (1) without issuing

the new forms in advance USCIS has prevented anyone from filing for

immigration benefits, including adjustment of status, on or after October 15, 2019;

and (2) without disclosing the new forms in advance of October 15, 2019, they

have not provided any meaningful opportunity for applicants, representatives, and

the public to prepare applications on or after October 15, 2019.  "Such an extraordinary delegation of authority cannot be extracted from the statute Congress enacted." *Kucana v. Holder*, 558 U.S. 233, 252 (2010).  The contravention of 8 U.S.C. § 1255(a) is but one example of many demonstrating that USCIS has unlawfully and arbitrarily failed to issue the necessary revised forms to allow applicants, their representatives, and organizations seeking to advise such individuals so they can prepare, advise, and apply for immigration benefits on or after October 15, 2019.  Accordingly, Plaintiffs have a substantial likelihood of success on its claim that Defendants action violates the APA.

But there is more.  "Generally, procedural due process requires adequate notice and a meaningful opportunity to be heard at some point before a right or interest is forfeited." *Williams v. Conner*, 522 F. Supp. 2d 92, 103 (D.D.C. 2018), *citing Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893 (1976).  The failure of Defendants to either issue the finalized versions of the new forms required to file for immigration benefits under the INA and extend a time by which the prior versions of the forms will be accepted is constitutionally insufficient.  *Id.*

Adequate notice and a meaningful opportunity to be heard, as provided under the Constitution, would require Defendants to provide far more than a couple days' notice to review the new forms to properly understand how to apply for immigration benefits to comply with the new regulations.  *Matthews*, 424 U.S. at

333 ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (internal quotation marks omitted).  Until Plaintiffs have a meaningful opportunity to view and have time to fully understand the forms' requirements, they will suffer prejudice due to an inability to file complete and accurate applications for immigration benefits.  The failure to complete applications on a timely basis will frustrate Plaintiffs ability to competently serve its respective members whose ability to file for relief may open and close again within a matter of days due to the monthly changes in the availability of visas.

Just this week, USCIS issued sixty-five changes to the final rule without permitting for notice and comment or providing good cause for doing so.  Because "the substantive effect [of the October 15, 2019 deadline] is sufficiently grave," *Lamoille Valley R.R. Co. v. ICC*, 711 F.2d 295, 328, 229 U.S. App. D.C. 17 (D.C. Cir. 1983)—it could spell the difference between retaining and losing the right to remain in this country—the policy of public participation in decision-making that underlies the APA has considerable force here and so too protections guaranteed under the Fifth Amendment.  Accordingly, Plaintiffs have established a substantial likelihood of success on the merits of his claims against the unlawful, arbitrary actions of Defendants.

## II.     Plaintiffs will suffer irreparable harm in the absence of an immediate injunction

Plaintiffs are already suffering irreparable harm due to Defendants' unconscionable policy, and, absent preliminary relief, they will suffer even greater harms.  "The [Supreme] Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barceló*, 456 U.S. 305, 312, 102 S. Ct. 179 (1982).  "[T]he concept of irreparable harm does not readily lend itself to definition." *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 514 F. Supp. 2d 7, 10 (D.D.C. 2007)).  "Nonetheless, the D.C. Circuit has laid out 'several well known and indisputable principles'" that guide courts' analyses." *Wis. Gas. Co. v. FERC*, 758 F.2d 669, 674, 244 U.S. App. D.C. 349 (D.C. Cir. 1985).  "First, the injury must be both certain and great." *Wis. Gas. Co.*, 758 F.2d at 674.  Second, that injury must be "so 'imminen[t] that there is clear and present need for equitable relief to prevent irreparable harm.'" *League of Women Voters*, 838 F.3d at 8 (alteration in original) (*quoting Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297, 372 U.S. App. D.C. 94 (D.C. Cir. 2006). "And, finally, the injury must be 'beyond remediation.'" *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297).

Plaintiffs have been and will continue to suffer irreparable harm through the frustration of its respective functions, costly expenditure of resources attempting to

mitigate the harm, and reduction of their funding and business, each of which is independently sufficient to show irreparable harm. *E.g., Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018, 1029 (9th Cir. 2013); *East Bay Sanctuary Covenant v. Trump, 354 F. Supp. 3d 1094*, 1116 (N.D. Cal. 2018) (East Bay I); Exhibits A, B.

A preliminary injunction is necessary to alleviate these harms and there is no adequate remedy available.  USCIS has unlawfully and arbitrarily failed to issue the necessary revised forms in advance that would reasonably allow applicants, petitioners, their representatives, and organizations seeking to advise such individuals, like Plaintiffs, to prepare, advise, and apply for immigration benefits on or after October 15, 2019.  Exhibits A-C.  Unless remedied by this Court, eligible applicants, petitioners, and their representatives will lose the statutory right to file applications for immigration benefits using the only forms publicly available, after expending weeks and months and many hours of professional time, including adjustment of status and nonimmigrant petitions, on or after October 15, 2019.  USCIS' action will foreclose the opportunity for some applicants to apply for immigration benefits because the availability of visas changes with each new month. *See Meina Xie v. Kerry*, 780 F.3d 405, 406-08 (D.C. Ct. App. 2015) (explaining the complex, constantly changing nature of visa availability); Exhibits A, B.

The failure of Defendants to provide a mechanism for information collection by the agency using revised forms, coupled with the impending cut-off of existing forms, has worked substantial hardship on AILA and its membership, and individual law firms including Plaintiff Parrilli Renison LLC.  *Id.*  The proposed rule is expected to impact more than one million filings, and significant time and resources have been expended in preparing filings on existing forms that may need to be entirely prepared anew due to the impending and arbitrary cut-off date established by Defendants. Although Defendants have the authority to delay implementation of the final rule and the unreleased finalized forms during the pendency of the lawsuits challenging the new regulation, it has not done so or offered good cause for its inaction.  *See* 5 U.S.C. § 705 ("When an agency finds justice so requires, it may postpone the effective date of action taken by it, pending judicial review.").  Defendants have acted arbitrarily, capriciously and unlawfully in failing to provide adequate notice and an opportunity to prepare for the revised forms for immigration benefits that incorporate the new "public charge" rules. Because the failure to release the requisite forms with enough advance notice prior to the expiration of currently available forms is contrary to law it must, be set aside and enjoined immediately to prevent irreparable harm. *See* 5 U.S.C. § 706(2)(A).

### III.    There is no Adequate Remedy Available at Law

Because the deadline for the acceptance of the only forms available

immigration forms is October 15, 2019, and Defendants have not provided for a

reasonable transition period to allow for any meaningful opportunity in advance to

prepare for the new regime there is no adequate remedy available at law to prevent

the continuation of Defendants' unlawful action.

### IV.    The Balance of Hardships Favor Plaintiffs, and The Injunctive Relief Will Not Harm the Public Interest

Plaintiffs seek to preserve the status quo to allow for a meaningful

opportunity to adjust to the new regime.  "While the Court must still consider the

traditional four-part test for injunctive relief even at the temporary restraining order

stage, the short duration of such an order and the imminence of the harm may

justify the grant of a temporary restraining order to preserve the status quo."

*M.G.U. v. Nielsen*, 316 F.Supp.3d 518, 520 (D.D.C. 2018), *citing Barrow*, 124 F.

Supp. 2d at 716-17.

At present, Plaintiffs and the public at large have relied upon the existing

forms to collect information and documentation necessary for complex

immigration filings, over weeks and months necessary to prepare them, and

Defendants have capriciously announced a cut-off date for acceptance of these

forms without providing a scintilla of advance notice in the form of revised forms

available to the public. *See* Exhibits A-C.  An injunction would preserve the status

22

quo to ensure compliance with the statutory right to file applications for relief after October 15, 2019.

The agency will not suffer from an extension of the time by which Plaintiffs and their clients can use existing forms that they have worked on for weeks and months.  They would benefit from the proper filing of the new forms after a sufficient learning period. The public interest will be served by extending the time that current forms may be used for filing, since the agency has unreasonably delayed action in issuing new and revised forms, leaving at the moment only days from the cut-off date when new forms must (according to Defendants) be used. *See* Exhibit C. There is no justification for Defendants to have delayed this long on issuing new revised forms, and at the same time demand that attorneys and members of the public simply drop all their well-prepared petitions in the waste basket and start anew at great cost and delay. Plaintiffs have endeavored to represent their members and their clients lawfully, complying with rules and forms available, and Defendants have unfairly delayed proper notice, information collection resources, and information dissemination. Exhibits A, B. The equities and public interest substantially weight in favor of an injunction.

## V.    The Court Should Waive Bond

Under Federal Rule of Civil Procedure 65(c), district courts have discretion to set the amount of a bond accompanying a preliminary injunction, and this

includes the authority to set a nominal bond. Here, the Court should waive bond

because the requested preliminary injunction is in the public interest, and the

injunction is necessary to vindicate Plaintiffs' rights. *Davis v. Mineta*, 302 F.3d

1104, 1126 (10th Cir. 2002) ("minimal bond amount should be considered" in

public interest case).

## <u>CONCLUSION</u>

Balancing the four factors, the equities weigh in favor of granting an

injunction to preserve the status quo. Plaintiffs have shown a likelihood of success

on the merits, they will suffer irreparable harm, there will be no harm to others,

and the public interest will not be negatively impacted. Plaintiffs respectfully

request this Court to enter a temporary restraining order granting Plaintiffs request

for immediate injunctive relief directing Defendants to continue to accept current

versions of forms beyond its self-imposed October 15, 2019 deadline, until a

reasonable time after Defendants issue proper notice and new forms for public use,

and until a hearing can be scheduled and briefing received on the preliminary

injunction motion.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/Jesse M. Bless
_____
Jesse M. Bless (MA BBO # 660713)
American Immigration Lawyers Association
1301 G. Street, Ste. 300
Washington, D.C. 20033
(781) 704-3897
jbless@aila.org

_____
Brent Renison
Parrilli Renison, LLC
610 SW Broadway Suite 505
Portland, Oregon 97205
brent@entrylaw.com

</div>

Dated:  October 7, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2019, I electronically filed the foregoing with the Clerk for the United States District Court for the District of Columbia by using the Court's Electronic Court Filing system.  A true and correct copy of the motion has been served via the Court's ECF system on all counsel of record. Because of the Court's transfer to the NextGen system, I have also mailed otherwise sent a copy of the foregoing to:

> Jessie K. Liu
> U.S. Attorney for the District of Columbia
> United States Department of Justice
> 555 4th St NW
> Washington, DC 20530
>
> Eric J. Soskin
> Senior Trial Counsel
> Civil Division, Federal Programs Branch
> (202) 353-0533
> eric.soskin@usdoj.gov

/s/Jesse M. Bless
Jesse M. Bless (MA BBO # 660713)
American Immigration Lawyers Association
1301 G. Street, Ste. 300
Washington, D.C. 20033
(781) 704-3897
jbless@aila.org