## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN IMMIGRATION LAWYERS ASSOCIATION, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> KENNETH CUCCINELLI, ACTING DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, *et al.* <br><br> Defendants. | Case No.  1:19-cv-02835-DLF <br><br> Judge Friedrich |

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

### INTRODUCTION

Nearly two months ago, on August 14, 2019, the Department of Homeland Security ("DHS") published *Inadmissibility on Public Charge Grounds* ("Rule") in the Federal Register. *See* 84 Fed. Reg. 41292. This Rule adopts regulations regarding the public charge ground of inadmissibility, a determination that Congress has long required DHS to make in connection with certain discretionary immigration benefits such as admission or adjustment of status. *See* 8 U.S.C. § 1182(a)(4). The most recent statutory iteration of the public charge ground of inadmissibility is found in the 1996 Illegal Immigration Reform and Responsibility Act. A person determined "likely at any time to become a public charge" is not admissible or able to access the immigration benefits to which the statute applies. 8 U.S.C. § 1182(a)(4). The Rule also imposes a public benefits condition on those seeking to extend their nonimmigrant stay or change their nonimmigrant status. The Rule's stated effective date is October 15, 2019.

In connection with the Rule, DHS is publishing both new and revised versions of several

forms applicants file for discretionary immigration benefits. These include the Form I-129 (Petition for a Nonimmigrant Worker), I-485 (Application to Register Permanent Residence or Adjust Status), I-539 (Application to Extend/Change Nonimmigrant Status), I-864 and I-864EZ (Affidavit of Support under Section 213A of the INA), I-944 (Declaration of Self-Sufficiency), I-945 (Public Charge Bond), and Form I-356 (Request for Cancellation of Public Charge Bond). DHS will use these forms once the Rule is effective, and old versions of these forms—used for the nonbinding interim field guidance previously in effect, *see* 64 Fed. Reg. 28689 (May 26, 1999)—will no longer be used, because they will no longer be current.

On October 4, 2019, OMB-approved versions of the new forms became publicly available at www.regulations.gov. The only changes that will be made to these forms between now and their official publication on the USCIS website, scheduled for October 9, 2019, is that watermarks will be removed, different fonts may be used, a version date of October 15, 2019 will be added, and the final forms will be rendered accessible to persons with disabilities. Notwithstanding their access to the near-final versions of these forms and the imminent publication of the final versions of the forms, Plaintiffs—a Portland, Oregon law firm and a national organization of immigration lawyers—seek an emergency injunction delaying the effective date of the Rule in its entirety for 60 days. No such relief is warranted.[1]

## STANDARD OF REVIEW

To secure a temporary restraining order, a plaintiff must establish the same elements necessary for a preliminary injunction. *Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93, 96 (D.D.C. 2003) ("The same standards apply for both temporary restraining orders and preliminary injunctions."). Preliminary relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v.*

---

[1] In light of the acute time constraints on this filing—which include the religious holiday of Yom Kippur beginning at sundown on October 8, 2019—Defendants will primarily address the issues raised by the Court in its October 7, 2019 Minute Order: standing and irreparable harm. Defendants maintain, however, that Plaintiffs are not likely to succeed on the merits and do not through this limited filing waive any right to further challenge the merits of Plaintiffs' claims.

*Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted); *see Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). An interim injunction is "never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and "a plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in in the public interest." *Id*. at 20, 24. A plaintiff cannot prevail without some showing on each of those factors. *See id*. at 23-24, 31-32 (holding that "proper consideration of" balance of equities and public interest "alone requires denial of the requested injunctive relief" and thus finding no need to address likelihood of success).[2]

To obtain preliminary relief, a party must show, among other things, "a substantial likelihood of success on the merits." *Mills v. District of Columbia*, 571 F.3d 1304, 1308 (D.C. Cir. 2009) (internal quotation marks omitted). "In this context, the 'merits' on which plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction." *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015).

## ARGUMENT

**I.      Plaintiffs Lack Standing and Therefore Have Not Established a Likelihood of Success on Their Claims.**

### A.  Plaintiff AILA Lacks Standing.

As the party invoking federal jurisdiction, AILA "bears the burden" of establishing that standing exists. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). To establish Article

---

[2] The D.C. Circuit "has, in the past, followed a 'sliding scale' approach to evaluating preliminary injunctions . . . . The continued viability of the sliding scale approach is highly questionable, however, in light of the Supreme Court's holding in *Winter* . . . ." *Singh v. Carter*, 185 F. Supp. 3d 11, 16 (D.D.C. 2016) (citing *In re Navy Chaplaincy*, 738 F.3d 425, 428 (D.C. Cir. 2013)); *see also Davis v. Pension Benefit Guarantee Corp*, 571 F.3d 1288, 1295-96 (D.C. Cir. 2009) (Kavanaugh, J., concurring).  Plaintiffs nevertheless contend that the sliding scale approach should be used, relying on authority that predates *In re Navy Chaplaincy*. *See* Mot. at 9 (citing *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *Davis* at 1291-92).

III standing, AILA must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty, Int'l*, 568 U.S. 398, 408 (2013).

AILA seeks to proceed on an "organizational" standing theory. *See* Compl. at ¶¶ 6-7, ECF No. 1. Establishing organizational standing to sue in its own right generally requires an organization to allege that "the defendant's conduct perceptibly impaired [its] ability to provide services;" the "defendant's conduct" must have caused "an inhibition of the [the organization's] daily operations." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). The organization "must allege more than a frustration of its purpose," and it "does not suffer an injury in fact where it expend[s] resources to educate its members and others unless doing so subjects the organization to operational costs beyond those normally expended." *Id.* at 919-20. The organization must also have "used its resources to counteract [the] harm" to its pre-existing activities, *id.* at 919, and the alleged harm must be "more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

Under these standards, AILA has not suffered an injury sufficient to satisfy Article III's requirements. AILA claims that the fact that the final versions of these forms are not yet ready is interfering with its "daily activity and interest in advising, serving, and educating its member-attorneys with appropriate guidance and information on immigration laws and regulations." Compl. ¶ 7. Yet AILA has available to it all of the content that will appear in the final forms, the

instructions for how to complete those forms, and the text of the new Rule and the regulations it adopts, providing AILA with an ample basis to "[a]dvise," "serv[e], "and "educat[e] its member-attorneys." *Id.*  And although AILA describes several purported harms that it has experienced, *see* Compl. ¶¶ 8-11, it provides no explanation as to why these harms could not have been avoided by the simple expedient of waiting for the release of the forms on www.regulations.gov, which occurred on October 4, 2019, ten full days in advance of the effective date of the Rule.  The fact that AILA wished to begin its activities sooner, and thereby chose to incur costs that could have been avoided had it waited, is the type of self-inflicted injury that does not suffice for standing. *See Food & Water Watch*, 808 F.3d at 919.

The injuries identified by AILA are also not redressable by the Court. Because the forms are now available, AILA has everything it needs to "prepar[e] affected members," "advis[e] members," "creat[e] new resources and materials," and "train[] staff." Compl. ¶ 10.  To the extent that AILA voluntarily chose to incur costs by accelerating some of these activities before release of the forms, an order by the Court delaying the effective date of the Rule, or mandating that the agency accept outdated forms, would not undo these harms. AILA has therefore also failed to satisfy redressability.

**B.  Plaintiff Parrilli Renison Also Lacks Standing**.

Parrilli Renison is a "two-person law firm," ECF No. 2-2 at ¶ 11, and describes its harms as involving its advance preparation of "scores of . . . applications" for which its lawyers "are still managing the remaining details in order to file." *Id.* at ¶ 13.  The forms, however, are not *the Rule*. Plaintiffs acknowledge that they have had the Rule since August 14, 2019, and were familiar with the proposed requirements of that Rule since the issuance of a Notice of Proposed Rulemaking ("NPRM") a year ago, on October 10, 2018. *See* ECF No. 2-1 at 6.  It is the Rule that contains the

"criteria by which USCIS determines whether an applicant for admission or adjustment of status is likely to become a 'public charge,' the Rule that governs the "weighted 'totality of circumstances' test," and sets forth the "array of factors" considered in those determinations. *Id.* at 6-7; *see generally* Rule, 84 Fed. Reg. 41292 *et seq*. The forms are principally ministerial documents that are the means to collect the information required by relevant statutes and DHS's regulations, including the Rule. That Plaintiffs have had access to the Rule for nearly two months greatly diminishes any harm to the firm related to the release of the forms on www.regulations.gov on October 4, 2019. The firm's declaration—executed that same date—does not explain why, with the new forms now in hand, the firm cannot prepare for the effective date of October 15, 2019, and file applications after that date as any "remaining details" become available.

Although the law firm identifies some costs it apparently incurred in completing old versions of the forms, it does not explain why it necessarily had to incur these costs.[3] It cannot come as a surprise that new forms will be needed as of October 15, 2019; the Rule itself explains that several new forms will be created and a number of old forms will be revised to collect the expanded information required by the Rule. 84 Fed. Reg. 41493-41500. By October 15, 2019, the fact of the Rule's effective date and the types of information the Rule will require will have been known for sixty days. And to the extent the particular applications that the law firm is working on will not be ready before October 15, 2019, any harm from having to redo the form is self-inflicted: the firm could have collected appropriate information and waited to complete the forms until the new forms were available. The firm identifies no reason why these applications *must* be filed on the outdated versions of USCIS forms, instead of on the new forms.

---

[3] Plaintiffs also do not explain why their alleged purely economic harms require an equitable as opposed to a legal remedy.

To be sure, the firm does identify a single applicant who "is leaving the country Tuesday," for whom it is "rushing to get [the] I-485 (as well as her husband's and child's [I-485]) filed before she leaves." ECF No. 2-2 at ¶ 13. But that case only illustrates the problem with the firm's standing claims. On the one hand, if the firm was able to get this applicant's application package filed today, Tuesday, then the old form would be the appropriate vehicle and there would be no harm that Plaintiff's requested emergency injunction would remedy. On the other hand, if the firm does not have this applicant's forms ready to file until after the October 15, 2019 effective date of the Rule, then the injury is self-inflicted: final preparation of the applicant's forms should have awaited the applicant's return (presumably after October 15, 2019), by which time the firm should reasonably have anticipated that only new forms would be available.  In short, the law firm's purported injuries amount to the ordinary time pressures of legal practice, compounded by self-inflicted harms from its voluntary decisions to complete forms that DHS had announced would only be accepted through a set end-date.

## II.     Plaintiffs Have Not Met Their Burden of Demonstrating Irreparable Harm.

Preliminary relief "is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Guedes v. BATFE*, 920 F.3d 1, 10 (D.C. Cir. 2019) (quoting *Winter v. NRDC*, 555 U.S. 7, 22 (2008)). Plaintiffs "bear the burden of persuasion in seeking preliminary relief" and "must establish that: (1) they are 'likely to succeed on the merits'; (2) they are 'likely to suffer irreparable harm in the absence of preliminary relief'; (3) the 'balance of equities' tips in their favor; and (4) 'an injunction is in the public interest.'" *Id.* "[I]rreparable injury is the *sine qua non* for obtaining a preliminary injunction," *Cal. Ass'n of Private Postsecondary Schs. v. DeVos (CAPPS)*, 344 F. Supp. 3d 158, 165 (D.D.C. 2018), and "the D.C. Circuit 'has set a high standard for irreparable injury.'" *Id.* at 170 (quoting *Chaplaincy*

*of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). "A prospective injury that is sufficient to establish standing . . . does not necessarily satisfy the more demanding burden of demonstrating irreparable injury." *Id.* Instead, the "injury must be unrecoverable; it must be 'both certain and great; [and] it must be actual and not theoretical.'" *Id.* (alteration in original) (quoting *Wis. Gas. Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

Both Plaintiffs have failed to properly allege, much less establish, that they have associational standing and therefore they cannot meet the elevated requirement of irreparable harm for injuries they allege in a representational capacity. To establish third party standing, a Plaintiff must establish that it is an association and that "(1) at least one of its members would have standing to sue in his own right; (2) the interest it seeks to protect is germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the member to participate in the lawsuit." *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 182 (D.C. Cir. 2017). To the extent Plaintiff Parrilli Renison alleges that it is representing injuries to its clients who seek immigration benefits, *see* Mot. at 18, 20, it has not demonstrated, nor could it demonstrate, that it is a membership organization or the functional equivalent thereof. *See Fund Democracy, LLC v. SEC*, 278 F.3d 21, 25-26 (D.C. Cir. 2002). Thus Parrilli Renison cannot rely on a theory of associational standing. *See id.* However, even if Parrilli Renison had alleged that the clients of its law firm had indicia of organizational membership, it has not alleged or established that any of its clients has standing to sue in his or her own right. *Ctr. for Bio. Div.*, 861 F.3d at 182; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). To the extent AILA alleges harms to its members as a basis for irreparable injury, its claims fail for the same reason. The only member AILA has identified is Parilli Renison, and as discussed *supra,* Parrilli Renison has neither standing based on injuries to itself nor associational standing based on injuries to its clients. *See Summers*, 555 U.S. at 498

(Precedent "require[s] plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm.").

The alleged direct harms to plaintiffs are also insufficient to meet the elevated irreparable harm standard. As discussed *supra*, they do not establish standing and therefore cannot meet the elevated standard of demonstrating irreparable harm. Even if these alleged direct harms could satisfy the standing inquiry, however, they are neither "significant," nor "unrecoverable," and therefore do not satisfy the irreparable harm standard. *CAPPS*, 344 F. Supp. 3d at 170.

First, Plaintiffs allege that because Defendants have not published the final versions of the new application forms sufficiently in advance, "eligible applicants, petitioners, and their representatives will lose the statutory right to file applications for immigration benefits." Mot. at 20.[4] However, as discussed *supra*, if there is such a right for individual applicants,[5] neither Plaintiff has established standing to bring such claims on their behalf. Conversely, there is no statutory right for "representatives," *i.e.*, immigration attorneys, to file applications for adjustment of status. *See* 8 U.S.C. § 1255(a). The relevant interpreting regulations give individual aliens the right to be represented by an attorney or other accredited representative in the preparation and submission of their applications and bestow no separate right on such attorneys or representatives themselves. *See* 8 C.F.R. § 103.2(a)(3). Even if the Court were to find that any delay by Defendants in

---

[4] Plaintiffs do not fully explain this contention, but they appear to be suggesting that they are impermissibly stripped of a statutory right by the slight practical delay in submitting applications in accordance with that statute caused by the time necessary to complete new forms which will become available on or before the effective date of the Rule.

[5] The relevant statutory section states that the Attorney General, whom the Secretary of the Department of Homeland Security has substituted, "may" adjust the status of an individual alien "in his discretion and under such regulations as he may prescribe" if that individual alien makes an application, is eligible for a visa and admissible for permanent residence, and a visa is available to him. 8 U.S.C. § 1255(a). Thus the statute permits but does not entitle any particular individual alien to make an application. However, because there are no individual plaintiffs and the Plaintiffs do not have standing to bring suit on behalf of individuals, the Court need not pass on this issue.

producing the revised application forms affected a statutory right of individual aliens, which it should not for the reasons described *supra*, such delay cannot be a cognizable harm *to Plaintiffs* and therefore cannot satisfy the irreparable harm standard. For the same reasons, Plaintiffs' claim that the delay in publishing the new forms violates their constitutional right to Due Process, Mot. at 17-18, cannot establish irreparable harm. Whether or not individual aliens have Due Process rights under the statutes and regulations identified by Plaintiffs, it is clear that these sections do not create any freestanding rights to immigration attorneys or organizations.

Plaintiff Parrilli Renison alleges only amorphous economic harms to its business. First, even "unrecoverable economic losses do not automatically constitute irreparable harm, but instead must be sufficiently severe to warrant emergency relief." *Save Jobs USA v. DHS*, 105 F. Supp. 3d 108, 115 (D.D.C. 2015). "[E]ven where the United States is the defendant, 'a plaintiff must establish that the economic harm is so severe as to cause extreme hardship to the business,'" in order to satisfy the irreparable harm standard. *CAPPS,* 344 F. Supp. 3d at 171 (quoting *Coal. for Common Sense in Gov't Procurement v. United States*, 576 F. Supp. 2d 162, 168 (D.D.C. 2008)). The declarant in Plaintiffs' Exhibit A states without any explanation that Parrilli Renison will lose between $25,000 and $50,000 as a result of the change in Defendants' forms. Renison Decl. ¶ 11. However, there is no basis in the record on which the Court can judge the reason such costs will allegedly be incurred, the likelihood of that alleged harm, or whether such a loss would constitute extreme hardship to the business. Plaintiffs have therefore not carried their burden to establish sufficient harm.

Second, the harm Plaintiffs allege to Parrilli Renison is factually unsupported. Their claims rely primarily on the idea that the costs Parrilli Renison has so far incurred in the preparation of the previous versions of the forms for clients currently seeking adjustment will all be wasted if

they are required to complete the new forms for those clients. Mot. at 10. But the new forms, as Plaintiffs are no doubt aware from reviewing the draft versions, require the same information as the old forms plus additional information about similar topics. *See* Ex. 1-6 (old and new versions of relevant forms). There is no basis for Plaintiffs' claims that delay in publishing the new forms will cause them to "drop all their well-prepared petitions in the waste basket and start anew at great cost and delay." Mot. at 23. Plaintiffs' prior efforts to collect and process all of the information required for the previous version will necessarily form the basis of Plaintiffs' responses to the more inclusive new versions. *See* Mot. at 8-9. Moreover, as discussed *supra*, if Plaintiffs did incur any costs in preparing these old versions that would not have been equally necessary to complete the new versions, it was a result of their own unnecessary decisions to attempt to complete applications with insufficient time to file them before the effective date of the Rule.[6]

Plaintiff AILA also has not established that it has organizational standing to bring suit, *see supra*, and therefore, by definition, its alleged injuries cannot satisfy the more demanding irreparable harm standard. AILA asserts that it has diverted resources from other priorities to advise and educate members concerning the implications of the new immigration form requirements. *See* Mot. at 5; Bless Aff. ¶¶ 3, 13. But such legal advice and education is AILA's primary function, and so this does not amount to an injury. *See*, *e.g.*, *Envtl. Working Grp. v. United States FDA*, 301 F. Supp. 3d 165, 172-73 (D.D.C. 2018) ("Plaintiffs allege that they have diverted resources to focus on this issue [but] they do not allege that these expenditures constituted

---

[6] Parrilla Renison states repeatedly that it takes between 4 and 8 weeks to process applications. The Rule was published on August 14th, seven weeks prior to the filing of this motion, and it would have been apparent to any immigration attorney that the new requirements would require an overhaul to the existing system requirements. Additionally the USCIS form webpages, which Plaintiffs refer to in their declarations, indicated from August 21, 2019 that the old forms would no longer be accepted as of October 15, 2019.

'operational costs *beyond those normally expended*.'" (quoting *Food & Water Watch*, 808 F.3d at 920)). AILA's "educational efforts [do not] suffice" to demonstrate a frustration of mission "because this type of work is exactly what [this] organization[] always do[es]." *Id.* at 172. Thus, even accepting Plaintiffs allegations as true, they have not alleged that AILA will suffer any cognizable harm in the absence of preliminary injunctive relief and cannot satisfy the irreparable harm standard.

Even if this Court were to find standing on the basis of the harms AILA alleges it has already incurred, those harms would not satisfy the irreparable harm standard. For that, Plaintiffs must establish that there is sufficiently certain, great, and unrecoverable future harm to justify preliminary relief, *see CAPPS*, 344 F. Supp. 3d at 170, and cannot rely on past injuries. *See In re Navy Chaplaincy*, 697 F.3d 1171, 1175 (D.C. Cir. 2012). However, AILA's alleged diversion of resources and frustration of mission are nevertheless primarily retrospective. *See* Mot. at 6, 11. AILA's costs in creating educational resources for its membership and advocacy efforts to Defendants to publish new versions of the form cannot be considered for purposes of assessing future irreparable harm.

Moreover, Plaintiffs' brief and AILA's own supporting declaration suggests that any future harms to AILA would be neither significant nor irreparable because they will naturally be resolved by the passage of (a short amount of) time. AILA alleges that it has been frustrated in its mission to provide legal advice to its members and has been required to divert resources to preparing such advice because it did not have the ability in advance to familiarize itself with the new forms. *See* Mot. at 5-6. However, as Plaintiffs acknowledge, the forms are forthcoming and AILA will be able to familiarize itself with their requirements over some brief future period such that it will no longer be impaired in the provision of its services. Indeed, AILA's declarant specifically stated that its

"harm would be entirely mitigated" if Defendants allowed the old forms to be used for 60 days after publication of the new forms because this would allow AILA "to advise and educate [its members] how to comply with the immigration law and regulations." Bless Aff. ¶¶ 15-16. But the time necessary for AILA to familiarize itself with the new forms, to the extent any is necessary given that the draft forms are already available, will pass regardless of whether or not Defendants briefly allow the old forms to be used. Plaintiffs therefore have failed to demonstrate that the particular harms alleged are irreparable.

Finally, the Plaintiffs have clearly failed to meet their burden to establish that their alleged harms are irremediable. Plaintiffs make no allegations in support of that claim but rather state in a single purely conclusory paragraph that they have no adequate remedy at law. Mot. at 21. This type of bald assertion cannot sustain Plaintiffs' burden.

## III.    The Balance of Hardships and the Public Interest Do Not Favor Injunction

Even if Plaintiffs had made a sufficient show of either likelihood of success on the merits or likelihood of irreparable injury, which they have not done, they would still be obligated to make a satisfactory showing both that the balance of equities tips in their favor and that the public interest favors injunction. *See Winter*, 555 U.S. at 20. These two factors merge when the Government is a party, *Guedes*, 920 F.3d at 10, and the Plaintiffs have not made a sufficient showing to meet either one.

First, the equities counsel against granting a temporary restraining order in this case. Although the factors a court considers in determining whether a TRO should be entered are the same as those considered for a preliminary injunction, the purpose of a TRO is only to maintain the status quo until briefing and a hearing for a preliminary injunction can take place. *See, e.g.*, *Bradshaw v. Veneman*, 338 F. Supp. 2d 139, 141 (D.D.C. 2004). Plaintiffs had ample time to file

their suit and move for relief in time to allow for regular preliminary injunction briefing and hearing prior to the effective date of the regulation, and they have needlessly manufactured the emergency they claim to face. Indeed, the Rule was published on August 14, 2019, and seven other suits for preliminary injunctive relief were timely filed in various jurisdictions challenging it.[7] Even if Plaintiffs should argue that they could not file their suit in a timelier manner because they were waiting for Defendants to publish the final forms, several assertions in their complaint belie this argument.

For one, according to Plaintiff Parrilli Renison, applications require four to eight weeks to complete, Mot. at 8, so when the new versions of the forms were not available within weeks of when the Rule was published (August 14, 2019), Plaintiffs could have filed their suit. For another, according to Plaintiffs, Mot. at 2, even if the final forms had been published on the date of the filing of their complaint, October 4, 2019, it would have been too late and they would suffer the same injuries. Thus, Plaintiffs clearly waited beyond the point where they knew they would allegedly be injured to file their suit and unnecessarily manufactured what they believe to be an emergency. For these reasons, equity disfavors the imposition of the extraordinary relief of a temporary restraining order. *See*, *e.g.*, *Jack's Canoes & Kayaks, LLC v. National Park Serv.*, 933 F. Supp. 2d 58, 81 (D.D.C. 2013); *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014) ("Courts have found that [a]n unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and

---

[7] *See California v. Dep't of Homeland Security*, Case No. 19-cv-4975 (N.D. Cal.); *City and County of San Francisco v. U.S. Citizenship and Immigration Servs.*, Case No. 19-cv-4717 (N.D. Cal.); *La Clinica de la Raza v. Trump*, Case No. 19-cv-4980 (N.D. Cal.); *Washington v. Dep't of Homeland Security*, Case No. 19-cv-5210 (E.D. Wash.); *New York v. Dep't of Homeland Security*, Case No. 19-cv-7777 (S.D.N.Y.); *Make the Road v. Cuccinelli*, Case No. 19-cv-7933 (S.D.N.Y); *Casa de Maryland v. Trump*, Case No. 19-cv-2715 (D. Md.).

irreparable harm . . . particularly where the party seeking an injunction ha[s] knowledge of the pending nature of the alleged irreparable harm."); *AARP v. U.S. EEOC*, 226 F. Supp. 3d 7, 22 (D.D.C. 2016); *Mylan Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000).

Plaintiffs further argue that the balance of equities tips in their favor because they have incurred costs relying on the old versions of the forms to prepare applications and because there is a statutory right to file applications, whereas Defendants not only would not be harmed but would actually benefit from the delay. Mot. at 23. As discussed *supra*, Plaintiffs' allegations are not cognizable harms and they therefore have no weight in the balance. Conversely, there can be no doubt that the Defendants have a substantial interest in administering the national immigration system, a *solely federal* prerogative, according to the expert guidance of the responsible agencies as contained in their regulations, and that the Defendants will be harmed by an impediment to doing so. Quite obviously, Defendants have made the assessment in their expertise that the "status quo" referred to by Plaintiffs is insufficient or ineffective to serve the purposes of proper immigration enforcement. Therefore, imposing the extraordinary remedy of a preliminary injunction and requiring the prior practice to continue before a determination on the merits would significantly harm Defendants.

Plaintiffs' alleged harms have no weight in the balance of hardships compared to the Defendants' interest in avoiding roadblocks to administering the national immigration system. Consequently, Plaintiffs have failed to demonstrate that the balance of hardships tips in their favor or that the public interest favors injunction. On this ground alone, their motion for a preliminary injunction must fail. *See Winter*, 555 U.S. at 26.

## IV. The Court Should Not Grant a Nationwide Injunction Or Stay Of The Effective Date.

Were the Court to conclude that the circumstances of one or more of the Plaintiffs or their

clients warranted emergency relief here, such relief should be limited to redressing only any established injuries to Plaintiffs. Under Article III, a plaintiff must "demonstrate standing . . . for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017); *see also Gill v. Whitford*, 138 S. Ct. 1916, 1930, 1933 (2018) ("The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it."). Equitable principles likewise require that an injunction "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994). Under these principles, "all injunctions—even ones involving national policies—must be 'narrowly tailored to remedy the specific harm shown.'" *East Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019); *see also California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) (collecting cases).


Dated: October 8, 2019                  Respectfully submitted,

                                        JOSEPH H. HUNT
                                        Assistant Attorney General

                                        ALEXANDER K. HAAS
                                        Branch Director

                                        */s/* Kuntal Cholera
                                        KERI L. BERMAN
                                        KUNTAL V. CHOLERA
                                        JOSHUA M. KOLSKY
                                        ERIC J. SOSKIN, PA Bar # 200663
                                        Trial Attorneys
                                        U.S. Department of Justice
                                        Civil Division, Federal Programs Branch
                                        P.O. Box 883
                                        Washington, D.C. 20044
                                        eric.soskin@usdoj.gov
                                        *Attorneys for Defendants*